IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DOROTHY CLARK, on behalf of herself and others similarly situated, ) ) ) | Case No. 3:20-cv-1109 |
| Plaintiff, ) ) ) | Judge Jack Zouhary |
| vs. ) ) ) | **JOINT MOTION FOR APPROVAL OF** |
| IAC HURON, LLC, ) ) ) | **FLSA COLLECTIVE ACTION SETTLEMENT AND DISMISSAL WITH** |
| Defendant. ) ) | **PREJUDICE** |

Representative Plaintiff Dorothy Clark ("Plaintiff") and Defendant IAC Huron, LLC ("Defendant") (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") collective action settlement and dismissing this case with prejudice. The settlement resolves a bona fide dispute under the FLSA and was reached by experienced wage and hour counsel after arms-length, good faith settlement negotiations.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement");

**Exhibit 2**: Declaration of Jeffrey J. Moyle; and

**Exhibit 3**: Proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice.

For the reasons set forth in the attached Memorandum in Support, the Parties respectfully request that this Honorable Court approve the FLSA settlement reached by the Parties, authorize the Parties to send notice of the settlement to the collective, and dismiss this case with prejudice.

1

Respectfully Submitted,

| | |
|---|---|
| */s/ Jeffrey J. Moyle* | */s/ Lynn Vuketich Luther (with consent)* |
| Jeffrey J. Moyle (0084854) | Lynn Vuketich Luther (0075166) |
| NILGES DRAHER, LLC | Emilie K. Vassar (0084076) |
| 1360 E. 9th Street, Suite 808 | EASTMAN & SMITH LTD. |
| Cleveland, OH 44114 | One SeaGate, 24th Floor |
| Telephone: (216) 230-2955 | P.O. Box 10032 |
| Fax: (330) 754-1430 | Toledo, OH 43699-0032 |
| jmoyle@ohlaborlaw.com | Telephone: (419) 241-6000 |
| | Facsimile: (419) 247-1777 |
| Hans A. Nilges (0076017) | E-mail: LVLuther@eastmansmith.com |
| Shannon M. Draher (0074304) | Email: EKVassar@eastmansmith.com |
| 7266 Portage Street N.W. | |
| Suite D | *Counsel for Defendant* |
| Massillon, OH 44646 | |
| Telephone: (330) 470-4428 | |
| Fax: (330) 754-1430 | |
| hans@ohlaborlaw.com | |
| sdraher@ohlaborlaw.com | |

*Counsel for Plaintiff*

## MEMORANDUM IN SUPPORT

I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>.

    A. **Summary of the Claims and Defenses.**

On May 21, 2020, Plaintiff filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and as a class action pursuant to Fed. R. Civ. P. 23 under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). Plaintiff alleged that Defendant violated the FLSA and OMFWSA by failing to pay Plaintiff and other similarly situated employees all of their overtime pay. Specifically, Plaintiff alleged that Defendant failed to compensate certain employees for time spent performing work prior to the start of their shift. (See Complaint Dkt. # 1). On September 18, 2020, Defendant filed its answer to Plaintiff's Complaint, in which it denied the material allegations in Plaintiff's Complaint, and denied that it violated the law in any way. (Dkt. #12).

On March 24, 2021, the Court approved the Parties' Joint Stipulation of Conditional Certification and Notice to Putative Plaintiffs, conditionally certifying a class defined as:

> All current and former employees of Defendant who worked in the Molding Department at Defendant's Huron, Ohio facility and were required to attend a pre-shift meeting or check a manning sheet prior to the start of their shift, but were not paid for that time within the three (3) years preceding the date of the Stipulation to the present.

(Dkt. # 22). Notice of this lawsuit and an opportunity to join was sent to 242 putative class members. (Declaration of Jeffrey J. Moyle ("Moyle Dec."), attached as Exhibit 3, at ¶ 9). A total of 27 putative class members opted in to this case. (*Id.*).

After the notice period was complete, the Parties engaged in informal discussions of whether settlement of this case would be feasible. In furtherance of those discussions, Defendant's counsel agreed to provide Plaintiff's counsel with wage and hour information. Following several

exchanges of settlement proposals, the Parties reached an agreement to resolve this case. (Moyle Dec. at ¶ 10).

**B.      Summary of Key Settlement Terms.**

The total settlement amount is $42,000. This amount includes: (a) all individual settlement payments to the Opt-In Plaintiffs; (b) a service award of $500 to Plaintiff for her services in bringing and prosecuting this Action; and (c) Plaintiffs' Counsel's attorney fees and litigation expenses. (Moyle Dec. ¶ 11).

If the Court approves the Settlement, then Plaintiffs' Counsel will mail Settlement Award checks to all Opt-In Plaintiffs. In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this lawsuit will be dismissed with prejudice, and Plaintiff and the Opt-In Plaintiffs will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the lawsuit. (*See, generally,* Exhibit 1)

**II.     PROPRIETY OF APPROVAL OF THE SETTLEMENT.**

The court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it "find[s] that the settlement is fair, reasonable, and adequate." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *5 (N.D. Ohio Mar. 26, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)). Courts in the Sixth Circuit apply seven factors to evaluate collective action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). "While these factors are helpful in guiding the analysis, the 'fairness of each settlement turns in large part on the bona fides of the

parties' legal dispute,' that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement." *Barnes*, 2019 U.S. Dist. LEXIS 65657 at *5. Application of these principles to this settlement demonstrates that approval is warranted.

### 1. No Indicia of Fraud or Collusion Exists

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation omitted). Here, the Agreement was achieved only after arms-length and good faith negotiations between the Parties, after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this case were to continue. (Moyle Dec., ¶ 12). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

### 2. The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted). Moreover, the Parties disagree over the merits of Plaintiff's claims, including whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and whether Plaintiff and the class/collective would be entitled to liquidated damages if they were to prevail on the merits. (Moyle Dec. ¶ 13).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the

3

Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of class/collective resolution. (*Id.* ¶ 14).

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. Defendant produced timekeeping and payroll records, and Plaintiff analyzed the data to create a damages model. (Moyle Dec. ¶ 15). As such, both of the Parties were able to perform a detailed analysis of the risks and possible outcomes of this case and the potential damages should Plaintiff prevail on her claims, which allowed the Parties to negotiate a settlement based on facts and data.

### 4. The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, while also recognizing that continued litigation will be uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that the Eligible Settlement Participants would receive no compensation or, if they do receive compensation, it will be after protracted litigation, likely also involving appeals. By settling the case at this relatively early stage of the litigation, the Parties and putative class/collective members bypass the inherent risks of litigation and achieve finality on this matter. (Moyle Dec. ¶ 16).

### 5. Class Counsel and the Class Representative Favor Approval

The parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. (Moyle Dec. ¶ 17). Plaintiff's Counsel supports the Settlement as fair and reasonable, and in the best interest of Plaintiff and the class as a whole, as described in the Declaration of Jeffrey Moyle. (*Id.*). "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*,

No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors approval of the Settlement.

### 6. The Reaction of Absent Class Members

All of the Opt-In Plaintiffs affirmatively opted into this lawsuit and, in doing so, agreed to be bound by any settlement reached by the Parties and approved by the Court. (*See, e.g.,* Dkt. #30-1). As such, this factor should favor approval of the settlement.

### 7. The Public Interest

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Here, rather than face the risk and uncertainty of continued litigation, the Settlement confers immediate benefits on the Plaintiff and the Opt-In Plaintiffs , avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court must "ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 U.S. Dist. LEXIS 144222, at *22 (N.D. Ohio Aug. 10, 2009). Here, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for Plaintiff and the Eligible Settlement Participants.

5

### 1. The Individual Payments Are Reasonable and Adequate

The settlement compensates each Opt-In Plaintiff based on his or her *pro rata* share of the Net Settlement based on the number of workweeks worked by the Opt-In Plaintiff during the period of time from March 24, 2018 through March 24, 2021 in comparison to the total number of workweeks worked by all Opt-In Plaintiffs during the same period of time. (*See* Exhibit 1 at ¶ 23). As such, each Opt-In Plaintiff has the opportunity to obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant within the period of time covered by the settlement.

Furthermore, the Settlement Payments to the class represent compensation for approximately seven minutes of alleged unpaid time per day, as well as liquidated damages in an equal amount.[1] (Moyle Dec. ¶ 18). Consequently, the Settlement Payments represent a reasonable and adequate settlement of each Opt-In Plaintiff's claims, and should be approved.

### 2. Plaintiff's Service Award Is Proper and Reasonable

The Agreement provides for a service award of $500 to Plaintiff, in addition to her individual payment. Courts routinely approve service awards to representative plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

---

[1] In addition to disputing any liability in this case, Defendant also disputes Plaintiff's Counsel's damages calculation. Thus, this representation is based solely on Plaintiff's Counsel's analysis of the damages, and does not constitute any sort of express or implied admission by Defendant.

Here, Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiff's counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. As such, the time and efforts Plaintiff provided supports the requested service payments. (Moyle Dec. ¶ 19).

### 3. The Attorney Fees to Plaintiff's Counsel Are Proper and Reasonable

After the Court has confirmed that the terms of settlement are fair to the Eligible Settlement Participants, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

Here, Plaintiff is requesting that the Court approve as reasonable attorneys' fees of $14,000.00, representing one-third of the settlement fund. "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (N.D. Ohio July 27, 2018); *see also, Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee

7

award 'and has been approved in similar FLSA collective actions in this judicial district.'") (citation omitted).

Furthermore, while "[t]he Court is not required to conduct a lodestar cross-check of the percentage of the fund fee award," *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019), Courts can use a lodestar cross-check "to confirm the reasonableness of the percentage-of-the-fund award." *Osman*, 2018 U.S. Dist. LEXIS 78222, at *7. Plaintiff's counsel's lodestar for this case is approximately $21,150, representing approximately 47 hours of "billable" attorney time at an hourly rate of $450 per hour. (Moyle Dec. ¶ 20). Accordingly, the attorneys' fee award in this case is less than Plaintiff's Counsel's lodestar, which further supports a finding that the requested attorneys' fees amount of $14,000 is reasonable, and should be approved.

Further, Plaintiff's counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Moyle Dec. ¶ 21). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); *see also, Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *16 (N.D. Ohio Mar. 26, 2019). Given

8

the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, the requested attorney fee award appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 4. The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case

Plaintiff's counsel should also be reimbursed their out-of-pocket expenses and costs in the amount of $5,728.60. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *20 (S.D. Ohio Nov. 25, 2019). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Plaintiff's counsel incurred out-of-pocket costs of $5,728.60, including the filing fee and related expenses, fees paid to Plaintiff's economist for evaluating Defendant's pay and time data, and fees paid to a third party administrator for mailing notice to the class and tracking responses. (Moyle Dec. ¶ 22). Because these costs and expenses are reasonable and were incurred in the prosecution of Plaintiff's claims and in administration of the settlement, the Court should award Plaintiff's counsel reimbursement of these costs and expenses from the settlement fund, and approve payment from the fund for settlement administration costs.

9

**III.     CONCLUSION.**

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal With Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payment; and (4) retain jurisdiction to enforce the settlement if necessary.